UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THOMAS PATTERSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:  1:21-cv-02391 (RC) |
| | : | |
| v. | : | Re Document Nos.:   12, 13, 14, 15 |
| | : | |
| DEBRA HAALAND, in her official capacity as United States Secretary of the Interior, and the UNITED STATES FISH & WILDLIFE SERVICE | : : : : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS AND
### MOTION TO WAIVE COMPLIANCE WITH LOCAL RULE 7(N)

### I.  INTRODUCTION

Thomas Patterson initiated this action for relief from a declaration of forfeiture issued by the United States Fish & Wildlife Service ("FWS"), a component of the Department of the Interior (the "Department"), as to an imported commercial shipment of twenty live tarantula spiders.  Patterson claims that the shipment violated no U.S. law, and therefore that the FWS had no authority to seize it.  Defendants move to dismiss for lack of jurisdiction, Fed. R. Civ. P. 12(b)(1), on grounds that Patterson waived his opportunity for judicial review when he elected to file a petition for remission with the agency and that he otherwise lacks standing.  Defendants also argue that Patterson failed to state a cognizable claim. Fed. R. Civ. P. 12(b)(6).  In addition,

1

Defendants move to waive compliance with Local Rule 7(n)'s requirement to file a certified list of the contents of the administrative record simultaneously with the motion to dismiss.[1]

The Court grants Defendants' motion to waive compliance with Local Rule 7(n) because consideration of the motion to dismiss does not require review of the administrative record.[2] As explained below, the Court also grants Defendants' motion to dismiss on grounds that the Court lacks jurisdiction to hear Patterson's claim because he waived his opportunity to challenge the forfeiture in court when he filed an administrative petition for remission.[3]

## II. FACTUAL BACKGROUND

On July 11, 2018, Thomas Patterson imported twenty live tarantula spiders on a commercial shipment from Denmark to Miami, Florida. Compl. ¶ 12, ECF No. 1; Def.'s Mot. Dismiss at 5, ECF No. 12 ("Def.'s Mot."). On July 17, 2018, an FWS Inspector notified Patterson in a phone call that the shipment had been seized because it violated Section 3372(a)(2)(A) of the Lacey Act,[4] a federal law prohibiting the import or export of wildlife in

---

[1] Local Rule 7(n) states that "[i]n cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first."

[2] In doing so, "the Court follows the practice of other courts in this jurisdiction when 'the administrative record is not necessary for [the court's] decision' regarding a motion to dismiss." *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (quoting *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) and citing *PETA v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014)).

[3] Because the question of jurisdiction is the "begin[ning], and end," of the Court's inquiry, the Court does not reach Defendants' motion under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004).

[4] In relevant part, the Lacey Act, 16 U.S.C. §§ 3371–78, makes it unlawful to "import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law," and defines "fish or wildlife" to include "arthropod[s] . . . or other invertebrate[s] . . . includ[ing] any part, product, egg, or offspring thereof." 16 U.S.C. §§ 3371(a), 3372(a)(2)(A).

violation of a foreign law, because the tarantula spiders' parental stock had been illegally exported from Brazil. Ex. 1 to Def.'s Mot. at 1–2; Compl. ¶ 13.

On September 17, 2018, the Atlanta Regional Office of Law Enforcement of the FWS issued Patterson a Notice of Seizure and Proposed Forfeiture (the "Notice"). Ex. 1 to Def's Mot. at 2; Ex. 2 to Def.'s Mot. The Notice described the property seized, its value ($14,000), and explained that the property was "imported on or about 07/11/2018 . . . in violation of and in a manner unlawful of the laws and regulations of the United States, specifically: Lacey Act (16 USC 3372(A)): Import – Wildlife; Unlawful import of wildlife in violation of foreign (Brazilian) Law." Ex. 2 to Def.'s Mot. at 1 (internal formatting omitted). The Notice included a chart explaining four "legal options available to" Patterson and their consequences: (1) abandon the property by filing an abandonment form by October 22, 2018; (2) take no action before October 22, 2018, which would result in administrative forfeiture; (3) submit a petition for remission to the FWS by December 16, 2018, which would stop the administrative forfeiture proceedings pending a decision on the petition by the Office of the Regional Solicitor of the Department (the "Solicitor"); or (4) file a seized asset claim by December 16, 2018, which would "be submitted to the U.S. Attorney's Office for filing in U.S. District Court as a civil Judicial Forfeiture Action." *Id.* at 2. In a paragraph below the chart, the Notice reiterated that taking the fourth option by filing a seized asset claim would cause the matter to "be removed from the agency and forwarded to the Federal court through the U.S. Attorney's Office" where "[i]t will be heard by the United States District Court for the judicial district in which the item was seized." *Id.*

On December 4, 2018, Patterson, through his attorney, filed a letter with the FWS. Ex. 3 to Def.'s Mot. The letter is titled "Petition for Remission" in bold, capital letters, has a subject line again labeling it a "petition for remission" and referring to the Notice, and contains a cover

3

sheet to an attached exhibit that once again labels it a petition for remission and refers to the Notice. *Id.* The Solicitor issued and served Patterson with a written opinion denying his petition on August 14, 2019. Ex. 1 to Def.'s Mot. That opinion explained that Patterson could file a supplemental petition requesting reconsideration of the denial by October 14, 2019. *Id.* On October 9, 2019, Patterson, again through his attorney, filed a supplemental petition. Ex. 4 to Def.'s Mot. This supplemental petition contained a section titled, "Petition for Remission," which explained that "[o]n December 4, 2018, Mr. Patterson file [*sic*] a Petition for Remission" and that the petition was denied. *Id.* at 1.

On January 7, 2020, the Solicitor issued and served Patterson with a written opinion denying his supplemental petition. Ex. 5 to Def.'s Mot. In light of this denial, the opinion stated that the "matter is now concluded" and requested that the FWS "issue a Declaration of Summary Forfeiture" for the seized tarantula spiders. *Id.* at 13. The following day, on January 8, 2020,[5] the FWS issued the Declaration of Summary Forfeiture, decreeing that the seized tarantula spiders "be forfeited to the U.S. Fish and Wildlife Service." Ex. 6 to Def.'s Mot. On January 18, 2020, Patterson, through his attorney, sent a letter to the Office of Hearings and Appeals of the Department ("OHA") requesting a hearing before an Administrative Law Judge. Ex. 7 to Def.'s Mot. On August 4, 2021, OHA dismissed Patterson's request. Ex. 8 to Def.'s Mot. On September 10, 2021, Patterson initiated this action. *See* Compl.

---

[5] The Declaration of Forfeiture states the date as January 8, 2019, but the sequence of events makes clear—as indicated in the body of the document as well as the uncontested description in Defendants' motion—that the date was in fact January 8, 2020.

### III.  LEGAL FRAMEWORK

#### A.  Asset Forfeiture

In 1980, the Department issued regulations establishing a procedure for administrative forfeitures under certain wildlife conservation statutes.  45 Fed. Reg. 17864–65.  In 1981, Congress overhauled the Lacey Act to, in relevant part, make it unlawful for any person to "import export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law, treaty, or regulation of any State or in violation of any foreign law."  The Lacey Act Amendments of 1981, Pub. L. No. 97-79, 95 Stat. 1074 (1981).  The legislation also authorized forfeiture for violation of that prohibition and charged the Secretary of the Interior with its enforcement, including by overseeing the forfeiture process.  *Id.* at 95 Stat. 1076–78.  These laws remain in force today, codified at 16 U.S.C. §§ 3371–78.  In response to these changes, in 1982, the Department added the Lacey Act, as amended, to the list of conservation statutes to which its administrative forfeiture regulations applied.  47 Fed. Reg. 56856–61.  Apart from an additional amendment in 1985, which increased the cap on the value of property subject to administrative forfeiture from $10,000 to $100,000, the relevant regulations, codified at 50 C.F.R. §§ 12.23–.24, have remained the same since.

Section 12.23 provides that, "[a]s soon as practicable following seizure, the Solicitor shall issue a notice of proposed forfeiture," both by publication in a newspaper and through "reasonable effort . . . to serve the notice personally or by registered or certified mail."  50 C.F.R. § 12.23(b)(1).  The notice must describe the property, and state the time, place and reason for seizure, including citation to the law allegedly violated.  *Id.*  The notice also must state "that any person desiring to claim the property must file a claim and a bond" in accordance with other

5

provisions of the section, and that "if a proper claim and bond are not received by the proper office within the time prescribed . . . the property will be declared forfeited to the United States." *Id.* Section 12.24 establishes the administrative process for the filing, consideration, and appeal of a petition for remission of property subject to administrative forfeiture. 50 C.F.R. § 12.24.

In 2000, Congress passed the Civil Asset Forfeiture Reform Act ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (2001). CAFRA overlaid a set of procedural and substantive rules for carrying out civil forfeitures on already existing forfeiture laws like that in the Lacey Act. *See id.* Most important for present purposes, CAFRA provides that "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure" and that any such claim "may be filed not later than the deadline set forth" in the notice of forfeiture they received. 18 U.S.C. § 983(a)(2)(A)–(B). Filing a claim would trigger a 90-day deadline for the government to file a complaint in U.S. district court or else release the property. *Id.* § 983(a)(3)(A).

Where no claim is filed and the property is ordered forfeited, CAFRA provides only a narrow avenue for relief at law: "Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property . . . ." *Id.* § 983(e)(1). CAFRA states plainly that such motion "shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." *Id.* § 983(e)(5).

CAFRA covers forfeitures pursuant to "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense." 18 U.S.C. 983(i). For avoidance of any doubt, in 2008, Congress amended the Lacey Act to clarify that CAFRA governs forfeitures under 16 U.S.C. § 3374—a category that includes the

seizure of Patterson's tarantula spiders. *See* 16 U.S.C. 3374(d) ("Civil forfeitures under this section shall be governed by the provisions of chapter 46 of title 18.").

### B. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). Accordingly, courts must address jurisdiction as a "threshold matter." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also McBride v. Mnuchin*, 2019 WL 3323412, at *2 (D.D.C. 2019) ("Before addressing the merits of a case, a court must confirm that it has subject matter jurisdiction."). In determining whether jurisdiction exists, a court may "undertake an independent investigation to assure itself of its own subject matter jurisdiction" and "consider facts developed in the record beyond the complaint." *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (citing *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) and *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

When considering a motion to dismiss, courts accept all material factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor. *American Nat'l Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). However, "[t]he burden of establishing any jurisdictional facts to support the exercise of the subject matter jurisdiction rests on the plaintiff." *CFA Inst.*, 74 F. Supp. 3d at 465.

### IV. ANALYSIS

Patterson, through his attorney, styles his complaint as a "declaratory judgment asking the court 'what the law is' and for relief from the seizure of Patterson's personal properties."

Compl. at 1.  In his prayer for relief, Patterson requests "[d]ismissal in full of the USFWS enforcement action" against him.  *Id.*  In substance, Patterson claims that the FWS "overreached [its] congressional authority because the Lacey Act is a criminal statute" and that "there are no U.S. federal codes or statutes or any U.S. federal agency rules or regulations that has [*sic*] made the [*sic*] Patterson's purchase of the Tarantulas . . . unlawful from a Danish seller in Denmark."  *Id.* at 2.  In their motion to dismiss, Defendants argue that, under CAFRA, the Court lacks jurisdiction to hear Patterson's challenge.  Def.'s Mot. at 8–13.  Defendants argue that, because Patterson does not contest that he timely received the Notice from the FWS describing the property seized and his options to challenge the proposed forfeiture, including the option to file a claim that would be considered by a U.S. District Court, he waived his opportunity for judicial review of the forfeiture under 18 U.S.C. § 983(e) when he elected instead to file a petition for remission before the FWS.  *Id.* at 8–11.

       The Court agrees.  Under the doctrine of sovereign immunity, the United States is immune from suit unless Congress expressly has waived the defense of sovereign immunity by statute.  See *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." (footnote omitted)).  "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed . . . ."  *Block v. North Dakota*, 461 U.S. 273, 287 (1983).  The "exclusive remedy" provision in 18 U.S.C. § 983(e)(5) operates as a limited waiver of sovereign immunity, rendering the United States amendable to suit for return of property subject to forfeiture for which no claim was filed only for defects in the notice of forfeiture.  *Malladi Drugs & Pharms. v. Tandy,* 552 F.3d 885, 890 (D.C. Cir. 2009) ("Having waived its opportunity

for judicial forfeiture proceedings during the administrative process, [plaintiff] may not now attempt to correct its choice of remedy in federal court."); *Rangolan v. Dep't of Homeland Sec.*, 2010 WL 908754, at *1 (D.D.C. March 9, 2010) (dismissing for lack of subject matter jurisdiction because "the United States has unequivocally expressed its consent to be sued to set aside an administrative forfeiture only if the notice was faulty, and [plaintiff] has not alleged, and it does not appear, that the notice was faulty"); *Martin v. Leonhart*, 717 F. Supp. 2d 92, 100 (D.D.C. 2010) (finding, due to plaintiff's failure to file a timely claim contesting a civil forfeiture consistent with 18 U.S.C. § 983(e)(1), that "[b]ecause a federal district court has no jurisdiction to entertain a lawsuit which is brought by a claimant wholly apart from the procedure established by Congress, this Court lacks jurisdiction to review the merits of plaintiffs' complaint"); *McKinney v. U.S. Dep't of Just. Drug Enf't Admin.*, 580 F. Supp. 2d 1, 3–4 (D.D.C. 2008) ("In short, once an administrative declaration of forfeiture has been issued under the CAFRA, the United States has unequivocally expressed its consent to be sued only under 18 U.S.C. § 983(e)(1), and [plaintiff] is not eligible to bring such a suit.").

      Patterson does not contest that he received the Notice from the FWS or assert that it was defective in any way. Nor does Patterson contest that he did not file a claim under 18 U.S.C. § 983(a)(2) and instead filed a petition for remission before the FWS. Indeed, he appears to concede as much in his opposition brief. *See* Pl.'s Opp'n at 2 (stating that Patterson's suit "was filed not to relitigate the administrative exhaustion"). Accordingly, Patterson has waived his opportunity to seek judicial review of the forfeiture, and the Court lacks subject matter jurisdiction to hear his challenge.

      Patterson also separately seems to request declaratory relief in the form of a clarifying construction, untethered to the forfeiture of his shipment of tarantula spiders, of the penalties

authorized by the Lacey Act. Compl. at 1 (asking the Court "what the law is"). The Court likewise lacks jurisdiction to issue such an advisory opinion.

In his opposition, Patterson incorrectly argues that, because he is seeking declaratory relief, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is "not relevant." Pl.'s Opp'n at 3. The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," federal courts may "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). The Supreme Court has held that the category of "case[s] of actual controversy" under the Declaratory Judgment Act is coextensive with the category of "cases" and "controversies" that are justiciable under Article III. *See MedImmune v. Genetech*, 549 U.S. 118, 126–27 (2007). Accordingly, it is a "well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction" and the "availability of declaratory relief presupposes the existence of a judicially remediable right." *C&E Serv's Inc. of Wash. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (cleaned up); *see also Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) ("A count for a declaratory judgment is not cognizable as a separate cause of action, but is more properly included in the prayer for relief." (cleaned up)). Therefore, plaintiffs "seeking prospective declaratory and injunctive relief must establish an ongoing or future injury that is certainly impending and may not rest on past injury." *Weissman v. Nat'l R.R. Passenger Corp.*, 21 F.4th 854, 857 (D.C. Cir. 2021) (cleaned up).

Patterson's complaint makes vague references to the possibility of future enforcement action against him but includes no supporting factual allegations. *See* Compl. at 1. This falls well short of what is needed to properly invoke the Court's limited jurisdiction. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (holding that the threat of future

prosecution must be "sufficiently imminent" and "credible"); *Navegar v. United States*, 192 F.3d 1050, 1053–54 (D.C. Cir. 1999), *cert. denied* 531 U.S. 816 (2000) (explaining that defendants had standing to pursue pre-enforcement challenges only to certain laws that "single them out as intended targets" but not to others where "nothing indicated a special priority of enforcement against" them); *Hoelscher v. United States*, 2018 WL 3466936, at *3 (W.D. Wis. July 18, 2018) (holding that the court had no jurisdiction to hear plaintiff's request for the court to "provide a clarifying construction of a criminal statute in the absence of an underlying claim").

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** and Defendants' Motion to Waive Compliance with Local Rule 7(n) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 28, 2022                                      RUDOLPH CONTRERAS
                                                                United States District Judge